UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

AUDREY GRACE WARE,

    Plaintiff,

  v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1]

    Defendant.

CASE NO. 2:16-cv-01475 JRC

ORDER ON PLAINTIFF'S COMPLAINT

  This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 7; Consent to Proceed Before a United States Magistrate Judge, Dkt. 8). This matter has been fully briefed. *See* Dkts. 13, 14.

---

  [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken, pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

ORDER ON PLAINTIFF'S COMPLAINT - 1

After considering and reviewing the record, the Court concludes that the ALJ erred when evaluating the medical opinion from one of plaintiff's treating physicians. The ALJ appears to have misinterpreted the record, as the ALJ found that Dr. Hatcher "did not perform any of the requisite testing [regarding the diagnosis of fibromyalgia]" AR. 25. However, Dr. Hatcher's treatment record indicates that she examined plaintiff and conducted palpation testing which yielded a positive result for reproduction of alleged symptoms. *See* AR. 425. This same treatment record also reveals that on testing, Dr. Hatcher observed "significant tenderness to palpitation throughout posterior musculature with trigger points consistent with fibromyalgia diagnosis." *Id*. Therefore, the ALJ's reliance on a lack of requisite testing is not based on substantial evidence in the record as a whole.

The ALJ also relied on a finding that Dr. Hatcher relied more on plaintiff's subjective reports than on the objective evidence; however, this finding, too, is not based on substantial evidence in the record as a whole.

Therefore, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, AUDREY GRACE WARE, was born in 1962 and was 51 years old on the alleged date of disability onset of September 1, 2013. *See* AR. 204-12. Plaintiff completed high school. AR. 36. Plaintiff has work history working in restaurants and food service. AR. 52-55.

According to the ALJ, plaintiff has at least the severe impairments of "osteoarthrosis; asthma; sleep-related disorder; obesity; affective disorder; anxiety disorder; [and] substance addiction disorder (20 CFR 416.920(c))." AR. 18.

At the time of the hearing, plaintiff was living in Section 8 housing. AR. 84.

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration. *See* AR. 109, 125. Plaintiff's requested hearing was held before Administrative Law Judge Tom L. Morris ("the ALJ") on December 30, 2014. *See* AR. 33-108. On March 27, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 13-32.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) The ALJ's residual functional capacity finding is unsupported by substantial evidence and the product of legal error in that the ALJ failed to provide specific and legitimate reasons for discounting several medical opinions; and (2) The ALJ failed to meet his burden at Step 5 in that his colloquy with the VE failed to account for plaintiff's medically required cane. *See* Dkt. 13, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) The ALJ's residual functional capacity finding is unsupported by substantial evidence and the product of legal error in that the ALJ failed to provide specific and legitimate reasons for discounting several medical opinions.**

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2).

Plaintiff contends, among other things, that the ALJ erred when failing to credit fully the opinion from one of plaintiff's treating physicians, Dr. Marylou Hatcher M.D. *See, e.g.*, AR. 517-19. Defendant contends that the ALJ's rejection of Dr. Hatcher's opinion is appropriate because Dr. Hatcher provided opinions regarding plaintiff's functional limitations on a check box form and because "Dr. Hatcher's opinion was based, at least in part, on [plaintiff's] discounted subjective reports . . . ." Dkt. 14.

Discrediting a doctor's opinion simply because she used a check box form is not valid unless that opinion is inconsistent with the underlying clinical records. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 ("the ALJ was [not] entitled to reject [medical] opinions on the ground that they were reflected in mere check-box forms"

where the "check-box forms did not stand alone" but instead "reflected and were entirely consistent with the hundreds of pages of treatment notes"); *see also Neff v. Colvin*, 639 F. App'x 459 (9th Cir. 2016) (unpublished); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (unpublished). Here, the check box forms did not stand alone and were accompanied with multiple treatment records over time, including the doctor's review of plaintiff's X-rays (*see* AR. 426). *See also, e.g.*, AR. 318, 417-19, 430-32, 445-47. The record includes reports of multiple examinations of plaintiff by Dr. Hatcher. *See, e.g.,* AR. 431. For example, on one of these occasions during which Dr. Hatcher performed a physical examination of plaintiff, Dr. Hatcher noted that plaintiff "appears in pain," and that plaintiff's gait "is slow and labored." *Id*. Plaintiff's record includes multiple examinations of plaintiff by Dr. Hatcher, and Dr. Hatcher noted in 2014 that she had treated plaintiff since 2006. AR. 519; *see also* AR. 320, 418-19, 429-31, 445-48. Dr. Hatcher also reviewed plaintiff's x-rays (AR. 426), as well as multiple lab results from tests performed on plaintiff. *See, e.g.*, 433-37, 449-50. Therefore, although it is true that Dr. Hatcher provided the residual functional capacity determination on a checkbox form, Dr. Hatcher's opinion also is supported by x-rays, lab results, and multiple examinations occurring over a long-term treatment history. *See* AR. 517-20.

In addition, the ALJ has not specified any inconsistency between Dr. Hatcher's opinion and the underlying treatment records. Thus, the ALJ committed legal error to the extent he discounted Dr. Hatcher's opinion because she used a check box form, particularly where, as here, Dr. Hatcher's opinion is accompanied by multiple clinical interviews and examinations, as well as review of testing such as X-rays.

In addition, the ALJ appears to have misread the treatment record from Dr. Hatcher. The ALJ found that "Dr. Hatcher did not perform any of the requisite testing in SSR 12-2p to support fibromyalgia as medically determinable for Social Security disability purposes." AR. 25. However, elsewhere in the written decision, the ALJ acknowledges that Dr. Hatcher reported in her clinical assessment that plaintiff demonstrated "significant tenderness to palpitation throughout posterior musculature with trigger points consistent with fibromyalgia diagnosis." *See* AR. 18-19, 425. Dr. Hatcher also specifically indicated in her treatment record that plaintiff's alleged symptoms were reproduced upon palpitation, which directly contradicts the ALJ's finding that "Dr. Hatcher did not perform any of the requisite testing . . . ." regarding the fibromyalgia diagnosis. AR. 425. Furthermore Dr. Hatcher specifically assessed that the tenderness to palpitation was demonstrated by plaintiff at the "trigger points consistent with fibromyalgia diagnosis." *Id*. The fact that the ALJ implied that Dr. Hatcher may not even have conducted any testing or observed any specific results is directly contrary to the treatment record including the reported observations of Dr. Hatcher, and her clinical assessment. *See* AR. 19, 425 ("palpitation: symptoms reproduced – yes"). The Court concludes that the ALJ's reliance on a lack of testing by Dr. Hatcher does not entail specific and legitimate rationale supported by substantial evidence in the record as a whole for the failure to credit fully Dr. Hatcher's medical opinion. *See* AR. 25. However, the Court acknowledges that although Dr. Hatcher appears to have completed the requisite trigger points examination and testing, she does not appear to have included all of the specific individual results that she observed during the examination, such as

exactly where the trigger points yielded a positive result, and exactly how many "trigger points consistent with fibromyalgia diagnosis" were observed. *See* AR. 425; *see also* AR. 18-19 (reference by the ALJ to the findings necessary for the establishment of a diagnosis of fibromyalgia for purposes of Social Security Disability, which can be demonstrated, in part by "at least 11 positive tender points on physical examination with digital palpation with an approximate force of nine pounds, bilaterally both above and below the waist . . . ."). Therefore, although this treatment record supports Dr. Hatcher's opinion, it appears that Dr. Hatcher's treatment record is ambiguous or inadequate to determine specifically the diagnosis for fibromyalgia for purposes of Social Security Disability. Although this does not entail an appropriate rationale for failing to credit fully this medical opinion, it does implicate the ALJ's duty to develop the record on this issue. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (the ALJ's duty to supplement the record is triggered if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen, supra*, 80 F.3d at 1288 (other citation omitted)).

Finally, although defendant contends that an ALJ may reject a treating physician's opinion if it is "based, at least in part," on a claimant's self-report, this contention is incorrect, as the doctor's opinion must be based "to a large extent" on such self-report, or must be "more heavily based on a patient's self-reports than on clinical observations" in order for the opinion to be rejected properly on this basis.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly

discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

The ALJ does not cite adequate support for the finding that Dr. Hatcher relied heavily on plaintiff's self-reports. As noted by the ALJ, Dr. Hatcher noted objective finding regarding plaintiff's deconditioning, which she apparently observed over her various examinations of plaintiff. Dr. Hatcher also noted, for example, that plaintiff demonstrated "guarding with pressure on lateral condyle of elbow," and that plaintiff's "shoulders have decreased [internal] ROT and [she] can barely get her hand to low back." *See, e.g.,* AR. 431. Of course, when possible, all doctors elicit from patients their report of symptoms, including here, reports of "pain all over." AR. 517. However, this common practice of doctors does not evidence heavy reliance: the "subjective" portion of an examination is a standard part of the "SOAP" format for medical encounters, and is accompanied by the "objective" portion, as well the "assessment" and "plan" portions. An ALJ may not rely on speculation when finding that a medical opinion is more heavily based on the subjective portion of the examination as opposed to the objective portion of

the examination, and there must be substantial evidence in support of an ALJ's findings. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22 (an ALJ may not speculate).

According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). As the record does not demonstrate that Dr. Hatcher's opinion is heavily based on plaintiff's subjective reports, and it includes indications of multiple physical examinations of plaintiff by Dr. Hatcher, *see, e.g.,* AR. 431, this rationale does not provide a legitimate reason based on substantial evidence in the record as a whole for the rejection of Dr. Hatcher's medical opinion. *See id*.

For the reasons stated, the Court concludes that the ALJ erred when evaluating the medical opinion of Dr. Hatcher. The Court also concludes that the error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In

*Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, Dr. Hatcher opined that plaintiff only could sit for fifteen minutes at a time; only could stand/walk for five minutes at a time; only could sit for a total of two hours in an eight hour workday; and only could stand/walk for two hours in an eight hour workday. AR. 517. She also opined that plaintiff required a job which permits shifting positions at will from sitting, standing or walking, and that plaintiff would require unscheduled breaks, although she did not specify how often this would occur. *See id*. She also opined that plaintiff has limitations in doing repetitive reaching, handling, and fingering, but again failed to specify the percentage of time during an eight hour workday during which plaintiff can conduct these activities. AR. 518. Dr. Hatcher also provided her conclusion that plaintiff is not capable of working eight hour day, five days a week employment on a sustained basis. *Id*. Dr. Hatcher indicated that although she had been treating plaintiff since 2006, the opined limitations existed since October 12, 2011. AR. 519.

The ALJ rejected these opinions, for example, finding that plaintiff "can stand and/or walk with normal breaks for total of about four hours in an eight hour workday [and] can sit with normal breaks for total of about six hours in an eight hour workday." AR. 22. It is likely that crediting Dr. Hatcher's opinions fully would lead to a finding of

disability. Therefore, the Court cannot conclude with confidence "'that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56).

However, although the ALJ did not provide adequate rationale for failing to credit fully Dr. Hatcher's opinions, further administrative proceedings would be useful in this matter. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("we generally remand for an award of benefits only in the 'rare circumstances,' *Moisa*, 367, F.3d at 886, 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed"). As noted previously, although it appears that Dr. Hatcher performed the requisite testing to support fibromyalgia as a medically determinable impairment for Social Security disability purposes, she does not appear to have provided a detailed accounting of the results from such testing. Therefore, it is unclear whether or not plaintiff suffers from fibromyalgia for purposes of Social Security disability, and the ALJ found that it is not a severe impairment. *See* AR. 18-19. Further development of the record on this issue likely would serve a useful purpose.

The Court also notes plaintiff's argument that the ALJ did not appear to afford appropriate weight to the fact that Dr. Hatcher was a treating physician and failed "to engage in the proper multi-factor analysis called for by the regulations resulting in plain error." Dkt. 13, p. 15 (citing 20 C.F.R. § 416.927 (c)); *see also* 20 C.F.R. § 416.927 (c) ("Unless we give a treating source's opinion controlling weight . . . . we consider all of the following factors in deciding the weight we give to any medical opinion,"

including treating relationship (including the length of the treatment relationship and the frequency of examination, as well as the nature and extent of the treatment relationship); supportability; consistency; specialization; and other factors). The ALJ's written decision does not reflect that the ALJ considered all of these factors, which likely would be useful following remand of this matter.

The Court also notes that the ALJ gave partial weight to Dr. Hatcher's December 2014 statement that a cane is medically necessary, but it is not clear whether the limitations assigned in the residual functional capacity determination adequately capture the limitations resulting from plaintiff's potential medical necessity to use a cane. *See* Dkt. 13, pp. 17-18 ("the Commissioner's rulings require the ALJ inquire about the use of such an assistive device during the VE testimony") (citing SSR 96-9p). Further development of this issue also may serve a useful purpose.

Finally, in the context of remanding this case for further Administrative proceedings as opposed to remanding with a direction to award benefits, the Court notes that plaintiff does not challenge the ALJ's failure to credit fully all of plaintiff's allegations and testimony. Therefore, the ALJ's assessment and evaluation of the medical evidence is especially important in this matter and there is disagreement among the medical sources regarding the extent of plaintiff's limitations. Following remand of this matter, the ALJ should afford proper weight to the opinions from plaintiff's treating physician. *See Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (citing SSR 96-2p, 1996 SSR LEXIS 9) ("A treating physician's medical opinion as to the nature and severity of an individual's impairment

must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record"); *see also Lester, supra*, 81 F.3d at 830 (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)) (more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant).

**(2)    The ALJ failed to meet his burden at Step 5 in that his colloquy with the VE failed to account for plaintiff's medically required cane.**

The Court already has concluded that the ALJ erred when evaluating the medical opinion of Dr. Hatcher, *see supra*, section 1. The Court also has concluded already that further development of the issue of plaintiff's use of a cane would serve a useful purpose. Therefore, this issue need not be discussed further.

CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 20th day of April, 2017.

_____
J. Richard Creatura
United States Magistrate Judge